

300 Delaware Avenue • Suite 200 • Wilmington, Delaware 19801
Tel: (302) 472.7300 • Fax: (302) 472.7320 • www.hegh.law

April 5, 2018

**Via ECF and Hand Delivery**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Unit 14, Room 6100
Wilmington, DE 19801-3555



Redacted Version Filed:  April 12, 2018

Re:   *Takeda Pharmaceuticals U.S.A., Inc. v. West-Ward Pharmaceutical Corporation, et al.*, Civil Action No. 14-cv-01268-RGA-RF

Dear Magistrate Judge Fallon:

Defendants West-Ward Pharmaceutical Corporation, Hikma Americas Inc., and Hikma Pharmaceuticals PLC (collectively, "Hikma") submit this letter brief pursuant to the Court's March 27, 2018 Order regarding the parties' Joint Motion for Teleconference to Resolve Discovery Dispute (D.I. 312). For the reasons set forth below, Hikma respectfully requests that the Court quash the Notice of Third Party Subpoena of Prasco, LLC ("Prasco") served by Plaintiff Takeda Pharmaceuticals U.S.A., Inc. ("Takeda") on March 8, 2018. (D.I. 298).[1] Ex. A

The Federal Rules of Civil Procedure ("FRCP") direct the Court to "limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FRCP 26(b)(2)(C). With deposition subpoenas, courts disapprove of subsequent subpoenas seeking information on the same topics as prior subpoenas, especially when the requesting party "had the opportunity to obtain this information during [prior] depositions."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2006 WL 2604540, at *2-3 (D. Del. Aug. 24, 2006); *see also Adams v. Sheldon*, 2008 WL 558615, at *1 (D. Del. Feb. 28, 2008) (concluding "Plaintiff's former attorney had adequate opportunity to depose Defendant, and that a second deposition of the Defendant would be duplicative."). These considerations are particularly relevant to the Prasco subpoena because "the [FRCP] afford non-parties special protection against the time and expenses of complying with subpoenas." *Halpin v. Barnegat Bay Dredging Co.*, 2011 WL 2559678, at *12 (D.N.J. June 27, 2011); *Power Integrations, Inc.*, 2006 WL 2604540, at *2 ("In the case of nonparty deponents, courts recognize that discovery should be more limited to protect nonparty deponents from harassment, inconvenience . . .").

Takeda's subpoena seeks duplicative 30(b)(6) testimony on nearly identical topics already examined at a prior 30(b)(6) deposition on January 19, 2018. Ex. B. Counsel for Takeda attended the deposition and had ample opportunity to, and did in fact, examine Prasco's corporate representative. Upon issuing the Subpoena, Takeda claimed for the first time that the Prasco designee was not adequately prepared on the 30(b)(6) topics. Takeda's position now, over two

---

[1] On March 12, 2018, Hikma served a duplicate of the Takeda subpoena in order to preserve its right to cross examine. If the Takeda subpoena is quashed, Hikma will withdraw its subpoena.

months after the deposition took place and after Hikma relied on the Prasco testimony in its expert reports, is a complete about-face. Both during and after the deposition, Takeda's counsel asserted that the witness *was* adequately prepared. In fact, it was counsel for Takeda that represented Prasco at the deposition,[2] prepared the Prasco witness for the noticed topics, and examined the witness.[3] Takeda has now issued a duplicative subpoena in an apparent attempt to elicit contradictory testimony. In a March 16, 2018 letter, Prasco's newly retained counsel agreed with Hikma that the Takeda subpoena was duplicative and set forth detailed objections to proceeding with a second deposition. Ex. D.[4] Takeda's tactics to change the record should not be allowed. Hikma respectfully requests that the Third Party Subpoena of Prasco be quashed.

**I.**   *The Court should not permit Takeda to take a duplicative 30(b)(6) deposition when it had a prior opportunity to examine Prasco on the same topics.*

On January 19, 2018, Mr. Ranson, Prasco's Regional Vice President/Business Development, testified on six topic areas.[5] Takeda now seeks duplicative testimony on two of those topics, even though its counsel represented Prasco at the time, attended the deposition, and examined Mr. Ranson. Topic 1 of Takeda's Subpoena notices "[t]he preparation of and the assumptions underlying the market projections, analyses, and forecasts included in" several exhibits from the first deposition. Ex. A. The plain text alone demonstrates clear overlap as these documents were *directly* discussed in the prior deposition. The topic also covers testimony within the scope of Topic 2 of the first deposition—"the overall projections and forecasts provided to Takeda as well as the general assumptions upon which the projections and forecasts are based." Ex. C.

Topic 2 of Takeda's Subpoena fares no better because testimony regarding "Prasco's analyses or evaluations that were provided to Takeda concerning the timing of launch of an authorized generic of Colcrys" falls well within the scope of Topic 6 of the first deposition. Ex. B. Indeed, Topic 6 noticed "analyses or evaluations that were provided to Takeda concerning (i) . . . being first to launch an authorized generic; (ii) . . . a simultaneous launch with another party of an authorized generic; and (iii) . . . not being the first to launch an authorized generic"—each of which directly relates to the "timing of launch of an authorized generic." Ex. B. In both instances, Takeda had ample opportunity to examine the witness but chose not do so. Takeda's failure to fully examine Prasco during the first deposition does not entitle it to "cumulative or duplicative" discovery by compelling Prasco to appear for an additional 30(b)(6) deposition.

The nonparty status of Prasco also weighs in favor of quashing the subpoena. As an initial matter, nonparties receive "special protection against the time and expenses of complying with subpoenas." *Halpin*, 2011 WL 2559678, at *12. Courts also expect the parties to produce relevant materials and information before imposing that burden on a nonparty. *A.A. Action*

---

[2] Takeda was represented at the deposition by Daniel Attaway and John Cox of Womble Bond Dickinson LLP ("Womble") and Elizabeth Laughton of Munger, Tolles & Olson ("Munger").

[3] At the time of the deposition, Takeda and Prasco were both represented by Mr. Attaway. Womble withdrew from its representation of Prasco prior to issuance of the subpoena by Takeda but continues to represent Takeda. Dinsmore & Shohl LLP now represents Prasco. Ex. D.

[4] As addressed in more detail in Section IV, Prasco has since agreed to proceed with a limited deposition that attempts to unfairly restrict Hikma's ability to cross examine the witness.

[5] The Topics were agreed to by Mr. Attaway after significant negotiation and narrowing of the original subpoena issued by Hikma. Ex. C.

*Collection Co. v. Dweck*, 2011 WL 13143955, at *1 (D.N.J. July 25, 2011) ("Plaintiff should first seek the discovery at issue from a party before burdening a nonparty with compliance of a subpoena."). Here, Takeda may be the party in the best position to explain documents in its possession or that it commissioned from Prasco. Three of the documents about which Takeda hopes to inquire are documents Takeda itself produced in discovery. Insofar as Takeda needed clarification on the meaning of their own documents, they should have sought that information in the first 30(b)(6) deposition (or in the years after they first received the documents) rather than embarking on multiple rounds of 30(b)(6) questioning of Prasco.

**II.     *Takeda should not be permitted to reverse its position that Mr. Ranson was adequately prepared when Takeda's counsel assisted in selection and preparation of the witness.***

Counsel for both Hikma and Takeda attended Prasco's 30(b)(6) deposition.



Now, several months later and after receiving Hikma's expert reports, Takeda has reversed course and claims that Mr. Ranson *was not* adequately prepared. On one hand, Mr. Attaway claims that his client—Prasco—was adequately prepared for the 30(b)(6) deposition topics. Then, with no explanation, Takeda seeks a do-over because Prasco was allegedly not adequately prepared. Takeda's improper posturing should not be encouraged or rewarded through duplicative and self-serving discovery in a belated attempt to seek contradictory testimony.

**III.    *Takeda's belated efforts to revise Prasco's testimony prejudice Hikma.***

Takeda received the documents listed in Topic 1 of the Subpoena as early as October 2014, produced at least three of those documents to Hikma in 2017, and attended Mr. Ranson's deposition during which each document was discussed. Despite many opportunities to examine the documents or question Prasco on its evaluations and assumptions, Takeda chose not to pursue that information until after Hikma submitted its expert reports relying on Prasco's testimony. It would be inappropriate and prejudicial to Hikma for Takeda to now go back and contradict that testimony.

In a similar context, courts have rejected attempts to later correct or contradict 30(b)(6) testimony through affidavits or declarations. *See Beck v. Test Masters Educ. Servs., Inc.*, 2012 WL 10817176, at *5 (D.D.C. Sept. 25, 2012) ("the time plaintiffs invested in taking the Rule 30(b)(6) deposition of Israni is rendered effectively worthless if TES can now simply replace his deposition answers with ones that better serve their current purposes."); *Rainey v. Am. Forest &*

*Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998) (explaining that Rule 30(b)(6) was designed to "prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case"). The same is true here. Prasco provided 30(b)(6) testimony, and now, during a late phase of the case, Takeda seeks to replace Prasco's answers with ones that better serve their current purposes.

### IV.   *In the alternative, the Court should order that any deposition be conducted in accordance with the Federal Rules of Civil Procedure*

On April 3, 2018, Prasco notified Hikma that it was willing to proceed with a second Prasco deposition based on a narrowed set of topics it negotiated with Takeda. Ex. F. If the Prasco deposition is to proceed, Hikma objects to the restrictive compromise agreed to by Takeda and Prasco. Ex. G. The scope limitations—negotiated exclusively between Takeda and Prasco—would permit Takeda to ask Prasco a narrow set of pre-arranged questions, while expressly forbidding any inquiry into the why, how, or basis of those responses by Hikma.[6] The proposed plan would deprive Hikma of any meaningful opportunity to cross examine the deponent regarding the topics introduced by Takeda. Indeed, Prasco would sidestep any questions relating to any exhibit other than those proposed by Takeda—or even those documents in full by excluding testimony on any specifics of how, why, or on what bases or assumptions Prasco prepared its analyses. And contrary to the Federal Rules, Prasco intends to instruct its witness not to answer any questions outside of that limited scope. *See* FRCP 30(c)(2).

For the reasons stated above, Hikma respectfully requests that the Court quash Takeda's Subpoena of Prasco or, in the alternative, if the deposition is to go forward order that it proceed in accordance with the Federal Rules of Civil Procedure, on the full scope of topics noticed in the subpoena, and that any instruction not to answer be limited to claims of privilege.

                                                                                                  Respectfully,

                                                                                                  */s/ Dominick T. Gattuso*
                                                                                                  Dominick T. Gattuso (#3630)

cc: All Counsel of Record (via email)

---

[6] Hikma also notes that the proposed scope limitations do nothing to address the duplicative nature of the requested deposition and, in fact, further demonstrate that Takeda seeks information Prasco has already provided. For example, one of Takeda's questions on exhibit 5 asks "Whether, in preparing the forecasts included in this presentation, Prasco based its modeling on AB-rated generic competition and why that decision was made and any associated assumptions." Prasco proposed narrowing the question by limiting the "why" and "associated assumptions" components to "general or high-level testimony" but excluding "specific or detailed testimony about Prasco's methodology, practices, analyses, models, forecasts, analytics, evaluations, reviews, or similar subject matter." [REDACTED] It's unclear what more Takeda expects to learn given the limited scope of permitted questions—Prasco has already testified to its "general or high-level" practices and anything else out would be out of the proposed scope.